**GREATER GILA BIODIVERSITY PROJECT, a non-profit corporation; Peter Galvin, an individual; and Southwest Center for Biological Diversity, a non-profit corporation, Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE; and John Bedell, Forest Supervisor, Apache–Sitgreaves National Forest, Stone Southwest Corporation, d/b/a Stone Forest Industries, Inc., Defendants.**

### No. CIV 94–1288 PHX RMB.

United States District Court,
D. Arizona.

Sept. 26, 1994.

---

Matt Kenna, Durango, Colorado, for plaintiffs.

Robert Bartels, Assistant United States Attorney, Phoenix, Arizona, defendants Bedell and U.S. Forest Service.

Robert D. Anderson, Phoenix, Arizona, for defendant Stone.

## AMENDED ORDER

BILBY, District Judge.

The Defendants having filed a Motion to Clarify and/or Amend Order of September 8, 1994 and good cause appearing therefor, the Court hereby issues the following amended Order in this action to allow the Intervenor to remove already cut sawtimber previously designated by the Forest Service in Payment Unit 7.

### I.

Plaintiffs filed this action seeking a temporary restraining order/preliminary injunction order compelling the United States Forest

Service ("FS") and intervenor Stone Southwest Corporation ("Stone") to halt logging on the Elk Timber Sale until the FS conducts a second Environmental Assessment ("EA"). Plaintiffs' Complaint arises from the fact that the contract issued to Stone represents a 529% increase in sawtimber and 131% increase in pulpwood over the volumes stated in the Environmental Assessment. The FS contends that the original EA figures were merely rough estimates and that the Elk Timber Sale was never based on volume. According to the FS, the increase in volume is not environmentally significant because the Stone contract serves the EA's objectives for a healthy forest.

On August 5, 1994, the Court conducted an evidentiary hearing. After testimony and assurances that large trees were not currently being logged, the Court denied Plaintiffs' motion for temporary restraining order.

To better understand the complexities of the forestry nomenclature and the tract at issue, the Court, counsel, parties and representatives from the Arizona Department of Game and Fish went on a two day site visit of the Elk Timber Sale area. After review of the pleadings, considering the testimony at hearing, and conducting the site visit, the Court finds that the Forest Service must conduct a supplemental EA addressing the increase in sawtimber.

## II.

### A. STANDING

■ Stone, asserts that Plaintiffs lack standing because they have not demonstrated injury in fact and the requested relief is not likely to redress Plaintiffs' alleged inju-

1. Stone brought this claim through a motion for summary judgment. As this Order will moot such a motion, the Court nonetheless decides to address the standing issue for jurisdictional clarification.

2. *Environmental assessment:*
   (a) *Means a concise public document for which a Federal agency is responsible that serves to:*
   (1) *Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.*

ry.[1] Stone is correct that Plaintiff Greater Gila Biodiversity Project ("GGBP") is a New Mexico non-profit corporation with its principle office in Silver City, New Mexico. However, Peter Galvin a member of GGBP and Greta Montagne a member of GGBP and Southwest Center for Biological Diversity have stated in their affidavits that they "used and will use the exact tract of land which comprises the Elk Timber Sale for (educational, scientific research, moral spiritual and recreational uses)." Such a use was found sufficient in *Portland Audubon Soc. v. Babbitt,* 998 F.2d 705, 708 (9th Cir.1993) (because the declarations indicate individual members have used and will continue to frequent the old-growth forests, plaintiffs have demonstrated injury-in-fact) and such a use is found sufficient in this case.

### B. NEPA VIOLATIONS

The National Environmental Policy Act of 1969 (NEPA), 83 Stat. 352, 42 U.S.C. § 4321, *et seq.,* requires federal agencies to prepare a detailed Environmental Impact Statement (EIS) for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In determining whether to prepare an EIS, an agency must prepare a less detailed document called an "environmental assessment." 40 C.F.R. §§ 1501.4(b), 1508.9.[2] If the agency determines on the basis of the EA that it is not necessary to prepare an EIS, the agency must prepare and issue a Finding of No Significant Impact (FONSI). 40 C.F.R. § 1501.4(e).

■ NEPA requires that federal agencies take a "hard look" at the environmental effects of their planned action and should

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.
(3) Facilitate preparation of a statement when one is necessary.
(b) Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), proposed action and alternatives, and a listing of agencies and persons consulted.
40 C.F.R. § 1508.9.

apply a "rule of reason" as to whether a supplemental EA is required. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 109 S.Ct. 1851, 1859, 104 L.Ed.2d 377 (1989). The "rule of reason turns on the value of the new information to the still pending decision making process." *Id.* Generally, NEPA requires supplemental statements when "remaining government action would be environmentally 'significant.'" *Id.,* 490 U.S. at 370–74, 109 S.Ct. at 1857–59. "Significantly" is defined as follows:

Significantly as used in NEPA requires considerations of both context and intensity:

(a) *Context.* This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interest, and the locality. Significance varies with the settling of the proposed action....

(b) *Intensity.* This refers to the severity of impact.... The following should be considered in evaluation of intensity:

(1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.

(2) The degree to which the proposed action affects public health or safety.

(3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical area.

(4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.

(5) The degree to which the possible effects on the human environmental are highly uncertain or involve unique or unknown risks.

(6) The degree to which the action may establish a precedent for future consideration.

(7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts....

(8) The degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register or Historic Places or may cause loss or destruction of significant scientific cultural, or historic resources.

(9) The degree to which the action may adversely affect an endangered or threatened species or its habitat ...

(10) Whether the action threatens a violation of Federal, State, or local law ...

40 C.F.R. § 1508.27 (1987).

## C. STANDARD OF REVIEW

■ Whether the volume increases were sufficiently "significant" is a classic example of a factual dispute, the resolution of which implicates substantial agency expertise. Thus, court review of the FS action with regard to the September 1993 Elk Timber Sale is limited to the arbitrary and capricious standard announced in *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). In reviewing a decision not to supplement an EA, the Court must not automatically defer to the agency's express reliance on an interest in finality. *Id.,* 490 U.S. at 378, 109 S.Ct. at 1861. Instead, it must satisfy itself that the agency has made a reasoned decision based on the agency's evaluation of the significance, or lack of significance, of new information. *Id.* The reviewing court must consider whether the agency has taken a "hard look" at the environmental consequences of its action and that its decision is based on the relevant factors and with no clear error of judgment. *Id.*

## III.

## A. BACKGROUND

The FS conducted an EA for the Elk Timber Sale analyzing the effects of cutting 283 thousand board feet of sawtimber and 3,846 cords of pulpwood from a harvest area of 2777 acres. The FS determined that "vegetation management" in the harvest area was necessary "to promote a healthy and vigorously growing forest with resistance to insects, disease, and wildfire, and which in turn will provide for healthy populations of wildlife." EA, FS Exhibit H at 2. Selecting

alternative # 3, the FS issued a Decision Notice and Finding of No Significant Impact ("FONSI") for the proposed Elk Timber Sale in the amounts stated above. Prior to the award of the timber contract, Stone filed an administrative appeal of the sale complaining that not enough timber was being sold as part of the sale. FS Exhibit L. The FS granted intervenor status to Apache County, Arizona Game & Fish Department and White Mountain Conservation League. On February 12, 1993, the FS and Stone met without the intervenors present and four days later Stone dropped its appeal. FS Exhibits M and N.

On September 23, 1993, John Bedell, Forest Supervisor issued a memorandum stating that certain diameter limits for the trees to be cut on the sale needed to be changed because the diameter limit specified by the sivicultural prescription for the intermediate harvest would not allow proper density management. FS Exhibit Q. Bedell concluded that no new environmental analysis would be required as the changes were necessary to meet the objectives of the NEPA Analysis and fell within the scope of the Decision Notice. *Id.*

After a nine day advertising period, the FS signed a contract for the Elk Timber Sale with Stone allowing for 1.78 million board feet (1780 MBF) of sawtimber and 8,899 cords of pulpwood to be cut. Answer of FS at ¶ 18. This represents an increase in volumes of sawtimber and pulpwood in the Stone contract of 529% and 131% respectively from the volumes stated in the EA, Decision Notice and FONSI. *Id.*

## B. DISCUSSION

■ The issue in this case is whether the FS is required to prepare a supplemental EA because the information developed after the completion of the EA constitutes substantial changes in the Elk Timber Sale that will affect the environment to a "significant extent" not already considered by the original EA. Plaintiffs assert that the FS made substantial changes with regard to the actual Elk Timber Sale and were, therefore, re- quired to prepare a supplemental EA before implementing the Sale.

Specifically, Plaintiffs contend that:

(1) The October 1992 EA, FONSI and Decision Notice addressed a proposed action that was defined in terms of volume of timber (283 MBF of sawtimber and 3846 cords of pulpwood);

(2) The Elk Timber Sale contract that was advertised and awarded to Stone involved substantially larger volumes of timber (1780 MBF of sawtimber and 8899 cords of pulpwood) than estimated by the EA;

(3) The subsequent increase in volume of sawtimber and in pulpwood is environmentally significant and requires the FS to obtain a new EA and Decision Notice;

(4) Failure to produce a supplemental EA has caused Plaintiffs irreparable procedural injury and allowing the Elk Timber Sale to proceed may cause harm to the environment;

(5) A preliminary injunction against further activity under the Elk Timber Sale contract would not cause significant harm to either the FS or Stone.

The FS argues that the amount of timber to be sold was never a part of the purpose of definition of the Elk Timber Sale, but was only an incidental by-product of this project. The FS asserts that this case is not about the number of large trees, but about the Sale's objectives. The Court finds that the two are interdependent—one cannot be determined without consideration of the other.

The primary goal of the Elk Timber Sale is to accomplish vegetation management in order to promote a healthy forest which can resist insects, disease and wildfire. EA, FS Exhibit H at 2. The FS contends that the challenges to the EA represent differences in forest management philosophy which do not warrant a supplemental EA. For example, much of the discussion between the FS, Plaintiffs and the Arizona Game and Fish Department entails the appropriate management of dwarf mistletoe.

### 1. Lack of Comment

According to Plaintiffs, the EA, as written, did not raise undue concerns. The Plaintiffs

assert, however, that they were not notified of the FS actions with regards to the substantial increase in sawtimber in the actual Sale. Thus, Plaintiffs were precluded from appealing the EA since the time to appeal had run.

Additionally, the Arizona Game and Fish Department (the "Department") questioned the conclusions of the EA and Decision Notice. Based on conversations with the FS, these concerns were resolved and the Department chose not to appeal the EA. However, the concerns resurfaced when the Department became aware of the actual contract awarded to Stone. Specifically, the Department was disturbed at the increase in the large tree harvest. The Department was actively working with the FS on this issue when communications broke down. The Department contends that the Forest Service's concern over meeting the notice for bid deadline before the end of September took precedence over the Department's concerns. The FS asserts that the differences were only philosophical and were rejected by the FS in its capacity as the ultimate decision maker.

The objective of the Elk Timber Sale is to achieve forest health and vigor. This is a valid goal. Discourse relating to the methodology for accomplishing this goal is not only valid, but desirable in order to make a reasoned decision. A decision should not rest on an incomplete discussion of environmental effects vis-a-vis old growth and the dependent species. *Seattle Audubon Soc. v. Espy*, 998 F.2d 699, 704 (9th Cir.1993).

### 2. Northern Goshawk

The Goshawk Guidelines provide that the preferred habitat includes snags, downed logs, woody debris, large trees, opening, herbaceous and shrubby understories and an intermixture of various forest vegetative structural stages. *Management Recommendations for the Northern Goshawk in the Southwestern United States,* FS Exhibit I at 4–5. Prey populations within the goshawk foraging areas are abundant when forests contain large trees and have relatively open tree understories. *Id.* at 5. The Elk Timber Sale has at least one active breeding pair of

goshawks in the area. This indicates that the habitat is presently to their liking. FS Exhibit M.

In general, the Lakeside District is deficient in large, overstory trees. At hearing, evidence was produced that a substantial sawtimber harvest is not appropriate where there is a deficiency of large mature trees. It is uncontested that the sawtimber estimated in the EA increased 529%. There is insufficient evidence that the FS took a "hard look" at the environmental consequences and applied a "rule of reason" when it discovered that the board feet of sawtimber had increased fivefold over the EA estimates. The value of this new information is environmentally significant as evidenced by the concerns raised by Plaintiffs and the Department.

Therefore, the Court finds that the FS violated the arbitrary and capricious standard when it did not conduct a new EA after discovering that the amount of sawtimber increased 529%. The Court also finds that the increase in volume in the pulpwood harvest is not a major concern and will, indeed, achieve the forest health objectives outlined in the EA without impacting on the wildlife.

This decision today, in no way reflects on the individuals involved. The Court was greatly impressed by the professionalism of all the parties. Everyone was concerned about the environment, the wildlife and the health of the trees. In short, there are no "bad guys" in this case, just dedicated professionals who happen to disagree on how to handle the complicated ecosystem of the Apache–Sitgreaves National Forest. However, when certain conduct may prove irretrievable, the government must ensure that input from all interested parties is considered before making a final decision.

### 3. Stone Timber Contract

Plaintiffs also seek to have this Court cancel the Stone contract in order that the FS, without influence, can make a "reasoned decision." There is no evidence to support such drastic action. To do so, would defeat the goal of all the parties—a healthy forest; healthy for people, wildlife and the trees themselves. Stone is free to continue har-

vesting the pulpwood as per its timber contract. If the new EA finds no significant impact, Stone will then be free to resume the sawtimber harvest as well.

IV.

IT IS ORDERED that Defendants' Motion to Clarify and/or Amend Order of September 8, 1994 and Stone's Motion to Amend Order and Request for Expedited Consideration are **GRANTED** to the following extent:

IT IS ORDERED that Plaintiffs' Motion For Preliminary Injunction is **GRANTED** and a injunction shall issue ordering the United States Forest Service and John Bedell, Forest Supervisor for the Apache–Sitgreaves National Forest, and the intervenor, Stone Southwest Corp., d/b/a/ Stone Forest Industries Inc., to halt all cutting of sawtimber on the Elk Timber Sale except that the intervenor may harvest any felled sawtimber previously designated by the Forest Service for harvesting in Payment Unit 7. This Injunction becomes effective with this Order and shall remain in effect unless or until it is lifted by order of this Court.

IT IS FURTHER ORDERED that the United States Forest Service conduct either a new or supplemental Environmental Assessment for the sale as it relates to sawtimber *only,* in accordance with NEPA, 42 U.S.C. §§ 4321–4370b and the U.S. Forest Service's notice, comment and appeal procedures, 36 C.F.R. Part 215.

IT IS FURTHER ORDERED that intervenor, Stone Southwest Corp., d/b/a/ Stone Forest Industries Inc.'s Motion for Summary Judgment and Plaintiffs' Motion to Strike are **DENIED** as moot.